UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JUDITH HANLON,

    Plaintiff,

    v.                                                      CIVIL ACTION NO. 23-12674-MPK[1]

TARGET CORPORATION,

    Defendant.

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(#39) AND ON PLAINTIFF'S MOTION TO AMEND (#45.)

KELLEY, U.S.M.J.

I. Introduction.

On September 27, 2023, the Plaintiff, Judith Hanlon, brought suit against the Defendant, Target Corporation ("Target"), after she fell and was injured while shopping inside one of its stores.[2] Target now moves for summary judgment on the single count remaining in this case:[3] Hanlon's claim against Target for negligence based on its alleged failure to maintain its premises in a reasonably safe condition. See #1-3 ¶¶ 11-15. Hanlon opposes. (#50.)

---

[1] With the parties' consent, this case was re-assigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c). (##13, 14.)

[2] The exact Target location in which the incident occurred has been the source of some confusion. This case was first filed in the Bristol County Superior Court before it was removed to this Court by Target on November 7, 2023 on the basis of diversity. (#1.) In her complaint, Hanlon alleges that the incident occurred at Target's Taunton, Massachusetts location, see #1-3 ¶ 5, although later the parties became aware—and now agree—that it in fact took place inside Target's Westwood, Massachusetts store. See #54 ¶¶ 1-2.

[3] Hanlon's two-count complaint asserts a second count of negligence against a John Doe defendant. See #1-3 at 4. At a status conference on October 28, 2025, Hanlon voluntarily dismissed the Doe defendant by stipulation pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). (#36.)

1

On December 9, 2025, one week after Target filed its motion for summary judgment (#39), Hanlon moved to amend her complaint. (#45.) Target opposes. (#53.)

For the following reasons, Target's motion for summary judgment is allowed, and Hanlon's motion to amend is denied. There are no genuine disputes as to any of the material facts in this case, and Target is entitled to judgment as a matter of law.

II. Background.

The following facts are undisputed unless noted otherwise.[4]

A. The Incident.

Around noon on April 8, 2022, Judith Hanlon was shopping with her friend, Marilyn Macrae, inside Target's Westwood, Massachusetts location when she fell on a section of the store's tile floor, fracturing and dislocating her right shoulder. (#51 ¶¶ 7-8, 11-12; #54 ¶ 7; #42-4 at 12; #42-6 at 8, 10.) At the time of the incident, Macrae was pushing a shopping cart while Hanlon walked alongside her "looking straight ahead." (#51 ¶¶ 9-10.) According to Hanlon, suddenly her "left foot stopped and [she] went down." Id. ¶ 11. Hanlon attributes the fall to her left foot having "hit a dry spot" on the floor,[5] although she acknowledges that no such spot was visible in the area in which she fell. Id. ¶¶ 12-14.

Macrae did not see Hanlon fall "but heard it." Id. ¶ 15. Macrae did not hit any "dry spot"

---

[4] The facts are drawn from: (1) "Target's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment" (#41) and (2) Hanlon's Responses (#51); from (3) Hanlon's "Statement of Disputed Facts" (#52) and (4) Target's Responses (#54); from (5) select exhibits attached to the "Affirmation of Tara E. Lynch, Esq." (#42), including transcript excerpts from the depositions of Judith Hanlon (#42-4), Marilyn Macrae (#42-5), and Jose Baca (#42-6); and from (6) transcript excerpts from the deposition of Wyatt Higginbotham (#50-2) attached to Hanlon's "Memorandum in Support of Her Opposition to Target's Motion for Summary Judgment" (#50).

[5] In her complaint, Hanlon had alleged that the floor was "in a wet and slippery condition[,]" see #1-3 ¶ 6; she later acknowledged at her deposition that this description was inaccurate and instead explained that the "[f]loor was dry." (#42-4 at 18.)

herself, and, following the incident, she did not observe "any wetness, dampness, difference in color, rippling, unevenness, or difference in texture" in the area where Hanlon fell. *Id.* ¶¶ 16-17; *see* #42-5 at 10. While she was still on the ground, Hanlon was approached by a man named Wyatt. (#54 ¶ 9.) On the date of the incident, Wyatt Higginbotham served as store director of the Westwood location. *Id.* ¶ 10.

> In describing their interaction, Hanlon testified at her deposition:
>
> A: He introduced himself as Wyatt and –
>
> Q: Okay. Did you get a last name for Wyatt?
>
> A: No. He asked me a few questions. He had me sign a paper.
>
> Q: What kind –
>
> A: He wanted me to go upstairs, but I'd been in so much pain, all I wanted to do was get to urgent care.
>
> Q: Okay. What questions did Wyatt ask you?
>
> A: I don't remember.
> . . .
>
> Q: So you don't know – you can't recall sitting here today anything that he asked you.
>
> A: No.
>
> Q: But you do recall that he asked you to sign a piece of paper.
>
> A: Yes.
>
> Q: Okay. What was the piece of paper that you signed?
>
> A: I don't know. Like I said, I was sort[*sic*] out of it.
>
> Q: Okay. Did you read it before you signed it?
>
> A: No.
>
> Q: Do you recall him saying what [the paper] was?

A: Something – he said was an accident report or something, I think.

(#50-1 at 5-7.)

When asked about it at his own deposition, Wyatt had no recollection of Hanlon's fall or of any conversation with her. *See* #54 ¶ 15; #50-2 at 3, 5, 7. It is undisputed that Target lacks any internal report of a fall at its Westwood location on the date of the incident, and that it lacks any record of an incident where a person fell on the store's tile floor in 2022. (#51 ¶¶ 19-20); *see* #54 ¶ 13.

B. Target's Policies and Standard Operating Procedures.

It was Target's protocol to prepare an incident report if someone fell in the store, assuming it was made aware of the fall. (#54 ¶ 12.) It was also its protocol to preserve any available surveillance footage, assuming such footage existed and it was made aware of the incident within its video surveillance retention period, which was fifteen days. *Id.* ¶¶ 14, 16; *see* #42-6 at 7.

Target contracts its floor cleaning services to Kellermeyer Bergensons Services ("KBS"). (#51 ¶ 21.) Beginning at 4 a.m. each morning, KBS sweeps the store's tile floors to remove debris before using a machine to wash, clean, dry, and then buff them. *Id.* ¶¶ 21-23. When KBS concludes its "guest-facing cleaning" by around 7:30 a.m., a KBS representative, accompanied by the Target Property Management Lead, walks the entire sales floor before the store opens at 8 a.m. "to ensure the floor is safe, clean, [and] spill-free." *Id.* ¶¶ 22, 24. If, during the morning walkthrough, the floors are found to be in an undesirable condition, a ticket requiring KBS to fix the reported issue is generated. *Id.* ¶ 25.

It is undisputed that Target has no record of a ticket being opened for any issue with the tile floor at its Westwood location on the date of the incident, or in 2022. *Id.* ¶ 26.

Additional facts will be added below, where appropriate.

III. <u>Legal Standard.</u>

Summary judgment is intended "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Tobin v. Fed. Express Corp.*, 775 F.3d 448, 450 (1st Cir. 2014) (additional citation and quotations omitted). It is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of asserting "the absence of a genuine issue of material fact" and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003) (additional citation omitted).

"[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" *Vineberg v. Bissonnette*, 548 F.3d 50, 56 (1st Cir. 2008) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990)). "A fact is 'material' only if it possesses the capacity to sway the outcome of the litigation under the applicable law." *Id.* (quotations, citations, and alteration omitted). "Once the moving party avers the absence of genuine issues of material fact, the nonmovant must show that a factual dispute does exist, but summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." *Fontanez-Nunez v. Janssen Ortho LLC*, 447 F.3d 50, 54-55 (1st Cir. 2006) (additional citation and quotations omitted).

In assessing whether summary judgment is proper, the court must view the record in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-movant's favor. *Ahmed v. Johnson*, 752 F.3d 490, 495 (1st Cir. 2014). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (additional citation and quotations omitted).

IV. <u>Discussion.</u>

    A. <u>Target's Motion for Summary Judgment (#39.)</u>

Target moves for summary judgment on Count One of Hanlon's complaint, which alleges that Target "negligently and carelessly breached its duty of care to [her]" by "failing to . . . properly maintain [its] Premises in a reasonably safe condition[.]" (#1-3 ¶ 13); *see id.* ¶ 14 ("[Hanlon]'s fall was caused by a defective condition existing on [Target's] property which [it], its agents, . . . and/or employees, knew or . . . should have known existed").

    1. <u>Hanlon Lacks Evidence of Any Defect or Dangerous Condition.</u>

Target argues that summary judgment is appropriate where Hanlon has admitted "that there was no observable defect on the floor where she fell[,]" and where she does not otherwise offer any evidence that a defect or dangerous condition existed. (#40 at 5.)

"'Negligence is the failure to exercise that degree of care which a reasonable person would exercise in the circumstances.'" *Smith v. United States*, 752 F. Supp. 3d 242, 266 (D. Mass. 2024) (quoting *Guzman v. Pring-Wilson*, 963 N.E.2d 1196, 1198 (Mass. App. Ct. 2012)) (additional citation omitted). Under Massachusetts law,[6] to succeed on a claim of negligence, "a plaintiff must carry the burden of proving the elements of duty, breach, causation, and damages." *Potvin v. Speedway LLC*, 891 F.3d 410, 414 (1st Cir. 2018) (additional citation and quotations omitted). A plaintiff must prove each of these elements by a preponderance of the evidence, meaning that "'[i]f the proposition is as probably false as it is true, then [she] has not met her burden.'" *Arraj v. United States*, 95 F. Supp. 3d 150, 157 (D. Mass. 2015) (quoting *Cont'l Assur. Co. v. Diorio-Volungis*, 746 N.E.2d 550, 555 n.9 (Mass. App. Ct. 2001)) (additional citation omitted).

"A property owner generally owes a duty to protect lawful visitors from dangerous

---

[6] The parties acknowledge that Massachusetts law applies. *See* #40 at 7-12; #50 at 7-8.

conditions on its land[,]" *see Potvin*, 891 F.3d at 414 (additional citations omitted), though this duty is not so far-reaching so as to "require a property owner to 'supply a place of maximum safety.'" *Id.* (quoting *O'Sullivan v. Shaw*, 726 N.E.2d 951, 954 (Mass. 2000)). Rather, "a property owner is only obliged to maintain its premises in a condition that 'would be safe to a person who exercises such minimum care as the circumstances reasonably indicate.'" *Id.* (additional citations omitted).

Where "a plaintiff seek[s] to recover against a shopkeeper for a fall on the premises[,] [she] must prove both that a dangerous condition existed and that the shopkeeper had notice, actual or constructive, of the dangerous condition but took no correction action." *Gomez v. Stop & Shop Supermarket Co.*, 670 F.3d 395, 397 (1st Cir. 2012) (citing *Sheehan v. Roche Bros. Supermarkets*, 863 N.E.2d 1276, 1280-81 (Mass. 2007)) (additional citation omitted).

Hanlon does not offer evidence of any defect or dangerous condition sufficient to create a triable issue of fact. Hanlon testified at her deposition that at the time she fell, she was walking down an aisle when her left foot "hit a dry spot" on the tile flooring that was not visible and her foot "stopped and [she] went down." (#42-4 at 15-16, 20.) According to Hanlon, Macrae "knew it was a dry spot[,]" *id.* at 16, though, like Hanlon, she did not actually observe one. *See* #42-5 at 11-12. Moreover, Macrae did not hit the dry spot herself, and she further testified that she did not observe any dampness, wetness, rippling, unevenness, or difference in color or texture in the area where Hanlon fell. *Id.* at 10-13.

Apart from her own speculative testimony that a "dry spot" existed, Hanlon offers no evidence of the existence of a defect or dangerous condition. "The law is well established that [a] Plaintiff's own general conjecture regarding a possible defect is not by itself enough to justify jury assessment of her claim." *Clairmont v. Target Corp.*, Civil Action No. 11-30188-MAP, 2012 WL

6553587, at *6 (D. Mass. Dec. 13, 2012) (collecting cases); *see Berg v. Dollar Tree Stores, Inc.*, Civil Action No. 22-10943-JCB, 2024 WL 4503916, at *3 (D. Mass. Mar. 12, 2024) (same). Such a dispute is genuine "only where record evidence might support an argument that a defendant has failed to use reasonable care." *Clairmont*, 2012 WL 6553587, at *5-6 (summary judgment was "inevitable" where there was no record evidence, aside from the plaintiff's "own conclusory offering, suggesting that there was *any* defect in the tiles where she fell"; her testimony that an unobserved "change in the surface" of the tile floor caused her to fall was insufficient) (emphasis in original); *see Barton v. Target Corp.*, Civil Action No. 19-12205-PBS, 2021 WL 2627964, at *2 (D. Mass. May 11, 2021) (summary judgment was warranted where no reasonable jury could find the existence of a defect; plaintiff "did not see anything on the floor" where she fell, and the video surveillance footage she proffered showed no visible substance).

  Hanlon argues, without citation to the record or any legal authority, that because Target's vendor, KBS, cleaned and buffed the floors daily, a jury "could reasonably conclude that the floor's condition—whether due to buffing residue, altered traction, or inconsistent surface friction—caused the fall." (#50 at 7.) It is, however, undisputed that Target has no record of a ticket being opened for any issue with the tile floor at its Westwood location in 2022. (#51 ¶ 26.) If Hanlon means to claim that some imperceptible "dry spot" altered the traction or coefficient of friction in the area in which she stepped, she offers no photographs or expert testimony to support such a theory. *See Lay v. Jordan's Furniture, Inc.*, Case No. 10-P-1344, 2011 WL 3444177, at *1 (Mass. App. Ct. Aug. 9, 2011) (issued pursuant to Mass. App. Ct. R. 23.0) (affirming summary judgment for defendant in a premises liability case where, among other things, plaintiff failed to offer any expert testimony as to the significance of the particular height of, or danger posed by, a curb she tripped over); *compare Quinn v. Morganelli*, 895 N.E.2d 507, 509 (Mass. App. Ct. 2008) (reversing

8

summary judgment decision where expert testimony submitted by the plaintiff that the use of certain tile in a particular environment created a dangerous condition was sufficient, along with other evidence, to create a triable fact).

In opposing summary judgment, the non-moving party may not simply "rest upon mere allegation or denials of his pleading" but must instead "present affirmative evidence[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).  Hanlon has not done this. *See Gomez,* 670 F.3d at 398 (plaintiff's suggested inference "that there must have been something sticky on the floor" was nothing more than "a possible explanation" and one "insufficient to create a genuine dispute about a material fact") (additional citations omitted).

2. <u>Hanlon Lacks Evidence That Target Had Notice of Any Defect or Dangerous Condition.</u>

Even if Hanlon could present evidence sufficient to create a genuine issue as to the existence of a dangerous condition, her claim would still fail where she does not show that Target had actual or constructive notice of one.  Under the traditional theory of premises liability, notice is established "if the operator of that business 'caused [the] substance, matter, or item to be on the floor; the … operator had actual knowledge of its presence; or the substance, matter, or item had been on the floor so long that the . . . operator should have been aware of the condition.'"[7] *Sarkisian v. Concept Restaurants, Inc.*, 32 N.E.3d 854, 857 (Mass. 2015) (quoting *Sheehan,* 863

---

[7] The Massachusetts Supreme Judicial Court has held that a plaintiff satisfies the notice element when she "proves that an unsafe condition on an owner's premises exists that was reasonably foreseeable, resulting from an owner's self-service business or mode of operation, and the plaintiff slip[ped] as a result of the unsafe condition[.]" *Sheehan*, 863 N.E.2d at 1286 (additional citations omitted).  Hanlon does not address this approach in her briefing, *see generally* #50 at 7, so the court will not either.  *See Khadda v. Target Corp.,* Civil Action No. 15-11542-LTS, 2016 WL 3976567, at *3 n.3 (D. Mass. July 22, 2016) (plaintiff waived any "mode of operation" argument she had not made); *see also Esquivel v. Target Corp.*, Civil Action No. 13-11398-FDS, 2014 WL 3510278, at *4 n.1 (D. Mass. July 11, 2014) (proceeding to address notice under the traditional approach where plaintiff did not contend that the defect she encountered was the result of defendant's mode of operation).

N.E.2d at 1276) (alteration and ellipses in original).

Hanlon argues that it can be reasonably inferred that Target had constructive notice of the dry spot "based on [its] control over the floor conditions and its daily cleaning and buffing regimen." (#50 at 7.) Again, it is undisputed that Target, who engaged KBS to sweep, wash, clean, dry, and buff the store's tile floors each morning before walking the premises in search of any defects, has no record of a ticket being opened for any issue with the tile floor in 2022. Hanlon offers no evidence that any of Target's employees were in the aisle and should have noticed a defect, and even if any employees were there, both Hanlon and Macrae testified that the "dry spot" was not visible. *See Fogarty v. Whole Foods Mkt. Grp., Inc.*, Civil Action No. 18-11090-DJC, 2020 WL 1446728, at *6 (D. Mass. Mar. 25, 2020) (plaintiff "did not observe, nor did anyone else observe, any dangerous condition at the time of her fall"; even assuming that a triable issue as to defect existed, plaintiff failed to show that defendant "had reasonable notice of such defect"); *Khadda,* 2016 WL 3976567, at *3 (the record evidence, including plaintiff's testimony that she had not noticed any defect before she fell, could not support the reasonable inference that store's employees knew or should have known of a dangerous condition); *Esquivel,* 2014 WL 3510278, at *5 (plaintiff did not offer any evidence that defendant's employees were near the defect and should have noticed it).

Because Hanlon has not put forward evidence of any dangerous condition or Target's notice of one sufficient to create a triable issue of fact, Target is entitled to summary judgment.[8]

3. <u>Hanlon's Spoliation Argument Is Without Merit.</u>

In one last effort to stave off summary judgment, Hanlon claims that Target has "destroyed

---

[8] In light of this conclusion, the court does not reach Target's alternative arguments for dismissal, *see* #40 at 2-3, including its assertion that summary judgment should enter based on Hanlon's admission that certain allegations in her complaint are inaccurate. *See id.* at 5-6.

the most critical piece of evidence in this case": video surveillance footage purportedly showing her fall. (#50 at 1.) According to Hanlon, Target failed to pull and then preserve video surveillance footage of the fall after Higginbotham, the store director at the Westwood location, became aware of the incident. *Id.* at 5-6. She argues that such spoliation precludes summary judgment. *Id.* at 5.

Although jurisdiction in this case is based on diversity, federal law governs the issue of spoliation. *Chapman v. Bernard's, Inc.*, 167 F. Supp. 2d 406, 413 (D. Mass. 2001) (additional citation omitted). "[S]poliation is the intentional, negligent, or malicious destruction of relevant evidence." *Townsend v. Am. Insulated Panel Co.*, 174 F.R.D. 1, 4 (D. Mass. 1997).

Fed. R. Civ. P. 37(e) governs claims of spoliation of electronically stored information ("ESI"). *Hefter Impact Techs., LLC v. Sport Maska, Inc.*, Civil Action No. 15-13290-FDS, 2017 WL 3317413, at *6 (D. Mass. Aug. 3, 2017). As multiple courts within this district have concluded, digital video, such as the purported surveillance footage here, is such information.[9]

Rule 37(e) provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> > (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> >
> > (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

---

[9] *See Sousa v. Seekonk Sch. Comm.,* Civil Action No. 22-40120-IT, 2023 WL 168601, at *2 (D. Mass. Jan. 12, 2023) (applying Rule 37(e) to spoliation dispute concerning overwritten security surveillance footage); *Sanchez v. AMTRAK*, Civil Action No. 20-30004-MGM, 2021 WL 11702517, at *3 (D. Mass. June 14, 2021) (considering claim that defendant failed to preserve locomotive video data by application of Rule 37(e)); *Boudreau v. Shaw's Supermarkets, Inc.*, Civil Action No. 2:17-259-DBH, 2019 WL 3242051, at *1-2 (D. Me. July 18, 2019) (applying the Rule with respect to computer hard drives that stored supermarket video surveillance footage), *aff'd,* 955 F.3d 225, 237-38 (1st Cir. 2020); *see also Rivera v. Sam's Club Hamacao*, 386 F. Supp. 3d 188, 206 & n.13 (D.P.R. 2018).

11

>> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e) (effective Dec. 1, 2015). "Whether and when there is a duty to preserve remains a decision based on 'a common-law duty' 'when litigation is reasonably foreseeable' and the Rule 'does not attempt to create a new duty to preserve.'" *Boudreau*, 2019 WL 3242051, at *1 n.4 (quoting Advisory Committee Notes on Rules -- 2015 Amendment, Fed. R. Civ. P. 37(e)).

Fundamentally, "the party urging that spoliation has occurred must show that there is evidence that has been spoiled (i.e., destroyed or not preserved)." *Gomez,* 670 F.3d at 399 (additional citation omitted). "Before an inference of spoliation may be drawn, its proponent must show at a bare minimum that the opposing party had notice of a potential claim and of the relevance to that claim of the destroyed evidence." *Id.* (additional citation omitted).

Hanlon does not satisfy either of these threshold requirements.

   a. <u>Hanlon Has Not Shown That Footage of the Incident Ever Existed.</u>

Hanlon speculates that her fall must have been captured by surveillance video. She offers no evidence that would support this fact, though, such as specific testimony regarding the layout of the Westwood store's surveillance system or photographs from near the location of her fall depicting nearby cameras. While it is true that Higginbotham testified that "[g]enerally most of the aisles" in the store were covered by video surveillance, *see* #50-2 at 4, this alone is insufficient. *See Gomez,* 670 F.3d at 397, 399 (rejecting plaintiff's claim that footage of his fall "must have existed"; although employee acknowledged that cameras covered "'a good majority'" of the store, such testimony "d[id] not support a conclusion (or even a reasonable inference)" that the particular

incident had been captured.) Moreover, although Higginbotham acknowledged that, in the event of a fall and an injury, it would have been his job to "request video that might show the incident" and make sure that any such footage was pulled, *see* #50-2 at 4-5, he did not testify that he was aware that any footage of the incident had been located. To the contrary, he testified that he had no recollection of it. *See id.* at 3, 5, 7.

### b. Hanlon Has Not Shown That Target Had Notice of Any Potential Claim.

Even assuming footage of the incident existed, Hanlon bears the burden of showing that Target's destruction of any such footage, or its failure to preserve it, occurred "at a time when [it] was on notice that the evidence might be relevant to potential litigation." *EEOC v. Chipotle Mexican Grill*, 98 F. Supp. 3d 198, 210 (D. Mass. 2015) (additional citation and quotations omitted); *see Sousa,* 2023 WL 168601, at *2 ("'The duty to preserve evidence arises when litigation is reasonably anticipated.'") (quoting *Gordon v. Dreamworks Animation SKG, Inc.*, 935 F. Supp. 2d 306, 314 (D. Mass. 2013)).

Jose Baca, Target's Fed. R. Civ. P. 30(b)(6) corporate representative, testified that pursuant to Target's video surveillance retention policy, footage is maintained for fifteen days before it is automatically overwritten. *See* #42-6 at 7. According to Target, it first received notice of the incident on May 18, 2022,[10] *see* #55 at 8, forty days after the fall occurred and thus well after any potential footage of it had become irretrievable. There is no evidence in the summary judgment record that Target reasonably anticipated litigation before receiving this notice, and by the time it

---

[10] Target cites a letter titled "Notice of Claim and Obligation to Preserve Evidence" it received from Hanlon's counsel. #55-3 at 2. The letter is dated April 22, 2022, and is marked as having been sent "By Certified Mail, RRR and First Class Mail." *Id.* As Target points out in reply, *see* #55 at 8, that letter, though addressed to Target's Westwood location, was plagued by the same "scrivener's error" that has followed this case since its beginning. *See* #55-3 at 2 (stating: "This claim arises out of an incident that occurred on April 8, 2022 at your store in Taunton.")

13

did, any footage of the incident—assuming it even existed—had already been erased.[11] *See EEOC*, 98 F. Supp. 3d at 209-10 (EEOC had not met its burden of showing that evidence should have been preserved; defendant received EEOC's notice of charge only after the footage plaintiff sought had already been automatically erased); *Sousa*, 2023 WL 168601, at *2 (plaintiff failed to show that surveillance video should have been preserved as "[t]here was neither pending litigation nor reasonably anticipated litigation at the time the video footage was overwritten"); *compare Boudreau,* 2019 WL 3242051, at *3 (retailer had a duty to preserve footage it had specifically preserved and set aside for retention but later lost; the record did not disclose "when the relevant hard drive disappeared or was overwritten[,]" and as far as the court was aware, "it could have occurred after the plaintiff filed [his] lawsuit").

B. Hanlon's Motion to Amend (#45.)

Hanlon's motion to amend, which proposes amending her complaint to reflect that the incident occurred at Target's Westwood location, as opposed to its Taunton one, is denied. Hanlon first moved to amend her complaint on December 9, 2025, one week after Target moved for summary judgment and more than a year and a half after the deadline for amendments of the pleadings except for good cause shown had expired. *See* #48 (citing ##7, 15-17.)

Hanlon's proposed amendment is futile. As Hanlon admits, the sole purpose of her motion is to correct a clerical mistake she acknowledges she made in her pleading—a mistake both parties

---

[11] To the extent Hanlon argues that Higginbotham had notice of her fall and violated Target's policy by failing to collect any footage that showed the incident, her argument is undeveloped, and, in any event, the First Circuit "has not endorsed such a theory for spoliation." *See Johnson v. Dredging*, Civil Action No. 23-11870-JEK, 2024 WL 5170265, at *2 (D. Mass. Dec. 19, 2024) (noting that plaintiff had not cited, and court was not aware of, any case in the First Circuit where failure-to-collect-evidence theory had been adopted) (citing *Gomez*, 670 F.3d at 400); *see also Karmue v. Moore*, 654 F. Supp. 3d 118, 136 n.18 (D.R.I. 2023) (plaintiff waived failure-to-collect argument he had not developed).

have known about since near the beginning of discovery.[12]  (#46 at 1-2.)  "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996) (additional citations omitted).  Apart from the incident's location, Hanlon's proposed amendment does not seek to change any factual allegations regarding the happening of the accident, including those material facts that entitle Target to summary judgment.

V. Conclusion.

For these reasons, Target's motion for summary judgment (#39) is allowed, and Hanlon's motion to amend (#45) is denied.  Judgment shall enter for Target.


January 26, 2026                                               /s/ M. Page Kelley
                                                               M. Page Kelley
                                                               United States Magistrate Judge

---

[12] As Hanlon explains, her proposed amendment "does not alter the theory of the case[,]" and, apart from a "clerical change," her claims "remain unchanged."  (#46 at 2) (cleaned up).